1                   UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
2                      ORLANDO DIVISION
                   Case No. 6:18-cr-154
3
. . . . . . . . . . . . . . .
4  UNITED STATES OF AMERICA,   :
                            :
5         Plaintiff,      :        Orlando, Florida
                            :        July 3, 2018
6            v.           :        3:28 p.m.
                            :
7  NAURAS SABRI ALAMERI,     :
                            :
8         Defendant.      :
. . . . . . . . . . . . . . .
9

10
               TRANSCRIPT OF INITIAL APPEARANCE/
11      ARRAIGNMENT HEARING/DETENTION HEARING
        BEFORE THE HONORABLE GREGORY J. KELLY
12          UNITED STATES MAGISTRATE JUDGE

13

14  APPEARANCES:

15

16  Counsel for Plaintiff:     Brandon M. Bayliss

17

18  Counsel for Defendant:    Larry B. Henderson

19

20

21  Court Reporter:     Amie R. First, RDR, CRR, CRC, CPE
                   Federal Official Court Reporter
22                401 West Central Boulevard, Suite 4600
                 Orlando, Florida  32801
23                AmieFirst.CourtReporter@gmail.com

24  Proceedings recorded by FTR Gold Digital Recording.

25  Transcript produced by Computer-Aided Transcription.

P R O C E E D I N G S

*****

THE DEPUTY CLERK:  Case Number 6:18-cr-154-ORL-31KRS, United States of America versus Nauras Sabri Alameri.

Counsel, please state your appearances for the record.

MR. BAYLISS:  Brandon Bayliss for the United States.  With me is Homeland Security Investigation Special Agent Jackie Acosta.  Good afternoon.

THE COURT:  Good afternoon.

MR. HENDERSON:  Good afternoon, Your Honor.  Larry Henderson with the Federal Defender's Office.  Seated to my right is Mr. Nauras Alameri.

THE COURT:  Good afternoon.

Mr. Alameri, this is your initial appearance and arraignment in regard to the one-count indictment that was filed against you.  The purpose of this hearing is to advise you of your rights and advise you of the charges against you.

And so you are advised that you do have the right to remain silent, and you're not required to make any statement whatsoever.  If you do choose to make any statement, the Government can then use that against you in regard to the prosecution of its case.  In addition, you

can invoke your right to remain silent at any point in time.

You're advised that you have the right to counsel and that if you cannot afford counsel, counsel will be provided for you at no cost.

You do have the right to confer with your counsel before any questioning by the authorities may begin. You have the right to have your counsel present during any questioning, lineup, and, of course, at all court proceedings.

If at any point in time you'd like a moment to speak with your counsel, just let me know.

I've reviewed your financial affidavit which I'm accepting as a request for court-appointed counsel. Based on the income and financial obligations you've outlined in that document, I do find it's appropriate to appoint counsel for you.

You'll have the Public Defender's Office providing you representation, specifically this afternoon Mr. Henderson acting as your counsel.

Mr. Henderson, have you and your client received a copy of the indictment?

MR. HENDERSON: We have, Your Honor.

THE COURT: Did you have time to review the charge with your client?

1          MR. HENDERSON:  I did.

2          THE COURT:  Any issue of identity?

3          MR. HENDERSON:  None, Your Honor.

4          THE COURT:  All right.  Mr. Bayliss, if you'll

5     give us a brief procedural background for the record for

6     the defendant's benefit.  Please summarize the charge he's

7     facing as well as the penalties and then finally address

8     the issue of bond for us.

9          MR. BAYLISS:  Your Honor, the defendant is facing

10    a charge of being a felon in possession of a firearm, in

11    violation of Title 18, U.S. Code, Section 922(g)(1).

12         He's facing the maximum penalties of no more than

13    10 years in the Bureau of Prisons; no more than a

14    $250,000 fine; no more than 3 years' supervised release;

15    and a $100 special assessment.

16         THE COURT:  All right.  When I ask for the brief

17    procedural background, it's usually whether he

18    self-surrendered or whether he was arrested.  And if so,

19    where?  And was he transported?

20         So just a little bit about that for us, please.

21         MR. BAYLISS:  He was indicted last Wednesday here

22    in grand jury.  He was arrested yesterday afternoon.  I did

23    call the Court and see, but it was a little bit after the

24    time that the Court could see him.  He was brought here.

25         He has pending state charges on four separate

counts all revolving around the idea of being an employee

or manager of an illicit gambling house in Brevard County.

At the time of that arrest, he was allegedly in

possession of a firearm.  He is a -- allegedly a convicted

felon with a conviction out of Minnesota.

And that is the extent of it.

THE COURT:  All right.  And then, finally, in

regard to the issue of bond.

What's the Government's position?

MR. BAYLISS:  Yes.  Your Honor, we're seeking

detention under 18 U.S.C. 3142(f)(1)(E).  It is a firearms

violation crime.  That's not a presumption case.

THE COURT:  All right.  Are you prepared to

proceed on the issue of bond now if the defendant wishes to

have it heard?

MR. BAYLISS:  Yes, Your Honor.

THE COURT:  All right.  Mr. Henderson, let's first

address the issue of arraignment.

Does your client wish to have a formal reading of

the indictment, or will he waive that?

(Defendant conferring with counsel.)

MR. HENDERSON:  Your Honor, we can go forward with

the arraignment.  We'll waive a formal reading of the

indictment and enter a not guilty plea as to the single

count.

1          THE COURT:  All right, then.  I'll enter a

2   scheduling order in this case which will be set for a

3   status conference to be held on August 14th.  That will

4   be at 1:00 p.m., and it will be held in Courtroom 5-A, as

5   in apple.

6          The case is set for trial during the trial term

7   that commences on September 4th of this year at 9:15 in

8   the morning before District Court Judge Greg Presnell.

9          All right.  Mr. Henderson, what's your client's

10  position on bond?

11         MR. HENDERSON:  Your Honor, he wishes to go

12  forward.  And I'm forced to proceed primarily by proffer.

13         I do point out that his brothers are present in

14  the courtroom.  They can -- Pretrial Services was unable to

15  verify some of the information that was provided.

16         THE COURT:  All right.  It's not a presumption

17  case.  So if he's ready to proceed, the Government said

18  they're ready.

19         So let me just hear from the Government first, and

20  then we'll have you respond.  You can proffer and/or call

21  witnesses if you wish.

22         But let me just ask you, does either side wish to

23  call witnesses on the issue of bond?

24         MR. BAYLISS:  I would prefer to proffer.  But

25  Special Agent Acosta is present and ready to testify if it

1  need be.

2         THE COURT:  Okay.  Mr. Henderson, what's your

3  preference?

4         MR. HENDERSON:  I'll proceed by proffer.

5         But I do point out that the family is present in

6  the courtroom.  And the reason that the information he

7  provided was unverified is because they were on their way

8  here.

9         THE COURT:  Okay.  All right.  Very well.

10         All right.  So then we'll hear proffer and

11  argument from the Government.  The same from the defense.

12  And then I'll allow the Government to reply.

13         Okay?

14         MR. BAYLISS:  Yes, Your Honor.  Thank you.

15         THE COURT:  Thank you.

16         MR. BAYLISS:  Your Honor, this is the first

17  hearing I've had in this courtroom where we actually make

18  argument.  Do you prefer that we --

19         THE COURT:  It would be best if you would speak

20  from the podium.  And that's simply because the microphone

21  will be closer to you, and we'll have a better record of

22  what you say.

23         MR. BAYLISS:  Thank you, Your Honor.

24         All right.  Today we're seeking detention on both

25  bases that he is a risk of flight and a danger to the

1    community.  I'll go through the factors in 3142 one by one.

2         First, the nature of the crimes and the character

3    of the circumstances.

4         This is a gun crime, Your Honor.  He was present

5    in a gambling house where money was present, money was

6    being made.

7         Other employees of the gambling house also

8    possessed firearms.  And one has to think that the reason

9    the employees are possessing firearms is because protection

10   is necessary because money is illicitly changing hands in

11   such an establishment.

12        So I do believe that the nature and circumstances

13   of the offense charged are inherently -- involve the risk

14   of violence.

15        The weight of the evidence in this case is great.

16   The weapon was found in his waistband as a result of a

17   pat-down and a search incident to arrest.

18        The local authorities in Brevard County were

19   executing a search warrant at which time they did find him

20   as a manager -- or I shouldn't say as a manager -- as an

21   employee in the gambling house.

22        He was arrested.  He was searched.  He had the

23   9 millimeter pistol in his waistband.  And they Mirandized

24   the defendant at which point he explained why he had the

25   pistol.

1    At that point he stated that I have it because I

2    was shot a few years ago working in a grocery store.  And

3    so I have it for protection.

4    He is a convicted felon.  We have received the

5    certified conviction records out of the state of Minnesota.

6    It is a mail theft conviction, which is a bit strange.  But

7    he received -- he was -- it is a felony in the state of

8    Minnesota.  It's punishable by over a year in prison.

9    So I think the weight of the evidence in this case

10   is great.  And perhaps a bit of a more complicated matter,

11   I believe that his risk for flight is a little bit

12   increased because --

13   THE COURT:  Why don't you talk about his personal

14   history and characteristics before you go to the fourth

15   element, okay?

16   MR. BAYLISS:  Okay.  Well, his personal history,

17   his criminal history is extensive as is laid out in the

18   Pretrial Services report.

19   THE COURT:  You know, the Pretrial Services report

20   is a bit problematic for me because many of the charges it

21   indicates that disposition is requested but they don't have

22   it.

23   The other thing that's strange to me is when you

24   look at the indictment, it says that he was convicted of

25   mail theft, which was a felony, on September 11th,

1  2008.  And when you look at his convictions, I don't see

2  that.

3          MR. BAYLISS:  Your Honor, if I may, actually I

4  have the certified conviction record with me.  I can --

5          THE COURT:  Well, it's just strange that it would

6  be the basis for the charge in the indictment and it

7  wouldn't be in the Pretrial Services report.

8          But yes, whatever you want to provide, I am

9  willing to review.

10          MR. BAYLISS:  Okay.  One moment, Your Honor.

11          THE COURT:  Uh-huh.

12          MR. BAYLISS:  Thank you.

13          (Pause in proceedings.)

14          MR. BAYLISS:  Your Honor, I think part of the

15  reason that the Pretrial Services report may not reflect

16  all of the specific charges is because his criminal history

17  was extensive and difficult to decipher as a result of the

18  numerous arrests.

19          THE COURT:  Well, if you can just tell me what it

20  is you think is clear regarding his criminal history and

21  what you have evidence of and how it should play in my

22  determination here, I would greatly appreciate it.

23          MR. BAYLISS:  Okay.

24          THE COURT:  Not to ask you to do Pretrial

25  Services' job for them, but I just don't have much to go on

1　here.

2　　　　MR. BAYLISS:  Of course, Your Honor.  It's a tall

3　task in a limited amount of time for them.

4　　　　THE COURT:  Right.

5　　　　MR. BAYLISS:  So I have the certified conviction

6　record.  It's filed September 11th, 2008, in the Ramsey

7　District Court.

8　　　　It is a petition to enter plea of guilty in a

9　felony case in Minnesota.  He's charged with felony

10　offering a forged check and felony mail theft.  He pled

11　guilty to the felony mail theft.  It says in the plea

12　document, plea to count two, dismiss count one stay in

13　position of sentence if no prior felonies.

14　　　　THE COURT:  And what's the date?  Is it the date

15　in the indictment, September 11th, 2008?

16　　　　MR. BAYLISS:  That's the date of the plea,

17　Your Honor.

18　　　　THE COURT:  Okay.

19　　　　MR. BAYLISS:  The date -- I don't have the actual

20　indictment.  The complaint is dated May 23rd, 2008.

21　　　　THE COURT:  Okay.

22　　　　MR. BAYLISS:  So if we look at the Pretrial

23　Services report --

24　　　　THE COURT:  Okay.  So that is the underlying

25　charge.  Tell me what else is it about his criminal history

that you know that should illuminate my decision in regard
to bond.

MR. BAYLISS: Your Honor, he does have a history
of controlled substance abuse. He was convicted or pled
guilty in 2003 to possession of a depressant, stimulant,
hallucinogenic, or steroids.

THE COURT: I did see that.

MR. BAYLISS: He also has an outstanding warrant
from a much more recent arrest, which was January 14th,
2014, possession and other drug crimes.

We believe that he has an outstanding warrant. We
have evidence that he has an outstanding warrant. We don't
have that paperwork yet. Pretrial Services indicated to me
that they have requested that paperwork.

THE COURT: Pretrial Services notes that there are
two active limited extradition warrants. And it's at the
very end of the criminal history.

MR. BAYLISS: Yes.

THE COURT: Is that -- are you talking about
something other than that?

MR. BAYLISS: No. That is what I'm talking about.
I discussed those two facts with Pretrial before this
hearing.

THE COURT: Okay.

MR. BAYLISS: So I do have a fear that he has not

shown up on all of his myriad of different charges in state
court on more than one occasion because he does have a
second outstanding warrant like you indicated also out of
Minnesota.

And those are much more recent.  The second
warrant was issued on August 14th of 2017.

THE COURT:  I see that.

MR. BAYLISS:  So I am nervous that he would not
appear in future hearings.  I'm also nervous that with this
amount of arrest --

THE COURT:  You're concerned -- you believe that
he's a risk of flight because of these things?

MR. BAYLISS:  Yes.

And in combination of those facts, the -- and this
is the slightly more complicated aspect of the case.  The
respondent is an unadjusted refugee from Iraq.  What that
means is he entered legally as a refugee.  He cannot
adjust.

Because of his drug convictions, he can never get
a Green Card.  That will be impossible for him.  And I know
this because of my immigration background.  He is stuck in
this bizarre limbo between the legal, like, able to move
forward with his applications and move forward with his
status.  And also he's not illegal.

THE COURT:  He's legally here physically, but he

1   can't work legally, is what you're telling me?

2           MR. BAYLISS:  He can actually work legally as

3   well.

4           THE COURT:  He can?

5           MR. BAYLISS:  However --

6           THE COURT:  Okay.

7           MR. BAYLISS:  However, if he is convicted of this

8   offense, it will have serious consequences to his

9   immigration status.  His refugee status will actually be

10  able to be reviewed because his conviction would bar him

11  from asylum.

12          So he would be placed in immigration court.  He

13  would be able to renew an asylum application, but he would

14  only be eligible for a lower standard.  He would have to

15  clear a higher bar in order to prove that he still merited

16  asylum on the basis of his conviction.

17          This is very much into the weeds even for --

18          THE COURT:  So where you're going is ultimately at

19  some point in time if convicted, he could end up being

20  deported.

21          MR. BAYLISS:  Yes.

22          THE COURT:  That's a lot of ifs down the road.

23  But I understand the contingency that you're addressing.

24          MR. BAYLISS:  And for that reason, there's no

25  detainer.  Because until -- and if or until he is

convicted, there cannot be an immigration detainer in this case.

THE COURT:  Okay.

MR. BAYLISS:  The special agent indicated to me that although the Pretrial Services report states that he does not have a substance -- or he did not indicate a substance abuse problem, he did state, I believe, to Pretrial that he uses Percocet three times a day.  And he stated to the agent that he has a pill problem, that he has an addiction to prescription pills.

So I think that also indicates that he may be a flight risk and also is a danger.

And I think that covers -- that covers what I wanted to address, Your Honor.

I do believe that we can move on both grounds.  I think he is a danger to the community.  He was involved in a dangerous activity.  He was armed.  And he's facing the consequences for that now.

And also, he does have incentive to flee.  I know he was out on a state bond, but this conviction would be far more grave in terms of his future in the United States than a state conviction for being involved in the gambling house.  And I believe that that renders him a risk of flight.

So I appreciate the Court's time.

1    THE COURT:  All right.  Thank you.

2    (Defendant conferring with counsel.)

3    MR. HENDERSON:  Your Honor, let me work backwards

4 from the information that I have that's verified.

5    And that's that apparently on March 29th of

6 this year a bond in the amount of $50,000 was posted.  The

7 defendant secured his release, and he has remained in the

8 community.  He has remained accessible to law enforcement.

9 There's no showing whatsoever that he has not appeared at

10 any of his state court proceedings.

11    I believe that he is represented by an attorney,

12 Mr. Mazin, in those state court proceedings.  I have not

13 had time to discuss that with him or contact him.

14    I've spoken with the defendant's brothers, who are

15 in the courtroom, and they indicated that they have spoken

16 with Mr. Mazin and that he is -- he is representing the

17 defendant on the state charges.

18    THE COURT:  So what you're saying is basically the

19 Brevard County charges that are reflected in the history of

20 February 24th, 2018, he was bonded on that.  He's been

21 on bond, you said, since about March 29th.  At least

22 that's what the Pretrial Services report indicates.

23    MR. HENDERSON:  Yes, Your Honor.

24    THE COURT:  And there hasn't been a problem since

25 then.

1    MR. HENDERSON:  That's correct.

2         Page 4 of the Pretrial Services report indicates

3    April 29th is when the bond was posted.  And he's been

4    out since then.

5         It's my understanding there are actually two bonds

6    posted.  The first dealt with the -- with being at that

7    gambling house.  He was charged with that.  And then he was

8    subsequently charged with having the firearm.

9         There was a state charge brought.  He posted bond

10   on that as well.  So he's actually out on two bonds, one of

11   which encompasses the federal charge, if you will.

12        He has not missed a court appearance.  He's made

13   himself available.

14        I would proffer to the Court that when he was

15   arrested today -- or excuse me, yesterday, he was at work.

16   He has a job at JJ Beauty Supply.  He was there.  He was

17   working.  He was trying to earn a living for his two sons.

18        And he has a job that will take him back if he can

19   get there.  So he is legally in the United States.  He is

20   able to work.

21        And as far as a flight risk, I don't think the

22   State, the Government has met its burden to show that he's

23   going to run away from these charges.

24        The threat to the community aspect of it, I would

25   also point the Court to the circumstances of the underlying

arrest on the firearm offense.  He was at an establishment.
He had a firearm on him apparently that was taken from him.

The information that I have is that he was shot
twice previously, that he still has two bullets in him that
-- and he is scheduled for surgery in the coming month, in
this month, where they are going to remove the bullets from
him.

That he was afraid for his life, and that's why he
was carrying the firearm.  It was in a work establishment.
It was not like he was out robbing someplace.  He had the
firearm on him.

He's uncertain as to whether he could have the
firearm.  He thought he could have the firearm.  So that's
neither here nor there.

The actual offense, the mail theft, it's my
understanding that was an aggravated misdemeanor and that
it was punishable by more than one year so it becomes a
felony under the federal 922.

So that's my understanding.  I have not researched
it to verify that.  I do believe he was put on probation,
though, in Minnesota for that offense.

The concern about the outstanding warrants, we
don't know the circumstances that those warrants were
issued, but apparently they do not want to extradite for
that.  But he could have left those jurisdictions before

the warrants were even filed, and he may not have even
known that there were warrants outstanding on him for him
to appear.

I would point the Court to the fact that he has
lived in the -- at the address listed in the Pretrial
Service report for over a year. He's living there with his
parents. His brothers are present in the courtroom.

He has shown no indication of running away. He
intends to stay and --

THE COURT: He's been on bond for two months so --

MR. HENDERSON: And that's correct, Your Honor.

It's also my understanding that there's a civil
suit pending against -- dealing with him being shot. And
that if he prevails on that, he stands to achieve a
monetary balance.

So as far as incentive to flee the country or to
run away, there's a substantial amount of money that I
believe is involved.

I can proffer that. I don't have independent
verification of that.

But -- and dealing with him today, I can represent
to the Court he was arrested yesterday at work, while he
was working. He didn't have a firearm on him -- firearm on
him at that time. And that he's gainfully employed.

And I don't believe the Government has met the

burden to show that he's either a danger or that he's a
flight risk.

I believe conditions can be set to assure that he
will be present in court.

THE COURT:  Anything in reply?

MR. BAYLISS:  Your Honor, I would just like to
point out that he was not at work at the time he was
arrested.  He was arrested driving his car away from his
home, and he was ticketed for driving with a suspended
license.

THE COURT:  All right.

(Defendant conferring with counsel.)

THE COURT:  All right.  Mr. Alameri, as you've
heard, the issue is whether or not I believe I can set
conditions which will reasonably assure your future
appearance and the safety of the community.

In regard to your future appearance, the
Government has the burden to prove by a preponderance of
the evidence that I cannot do that.

And in regard to danger to the community, they
have the burden to show by clear and convincing evidence
that I cannot set conditions which will reasonably assure
the safety of the community.

In making the determination, I need to consider,
as you heard, the nature and circumstances of the offense.

I agree the nature and circumstances of this offense weighs against your release.

Somebody who's already been shot twice, why you would be at a gambling house with a firearm to protect yourself ostensibly, you know, is -- if you're concerned about the danger, you probably shouldn't be there.  It looks like instead you went to the danger.

The weight of the evidence against you definitely weighs against your release.  As the Government proffered, you were found with a 9 millimeter in your waistband.

The third factor is your personal history and characteristics.  And even with regard to the dispositions that I have, I find that your personal history and characteristics weigh against your release.

And the nature and seriousness of the danger that you pose to the community is the last factor.  And in light of all of the foregoing, I find that the nature and circumstances of the danger you pose to the community is substantial.

So I am going to order that you be detained pending further proceedings.

I think the Government has met its burden in regard to danger.

And in regard to risk of flight, I don't think the Government has met its burden.  I don't think you're a risk

1    of flight.

2        Anything further from the Government?

3        MR. BAYLISS:  No, Your Honor.  Thank you.

4        THE COURT:  Defense?

5        MR. HENDERSON:  Your Honor, I'd just clarify, it's

6    my understanding he was at the gambling house more or less

7    as an employee.  He was directed to go there by his boss to

8    fill in for an employee that was not there.  So he was not

9    gambling.  He was simply at the location.

10        THE COURT:  Being at it with a firearm in your

11    waist, not a good thing, especially for somebody that's

12    already been shot twice.

13        Thank you.

14        We're adjourned.  You're excused.

15        (Proceedings adjourned at 3:53 p.m.)

16                 *****

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2

 3           I certify that the foregoing is a correct

 4    transcript from the record of proceedings in the

 5    above-entitled matter.

 6

 7    August 8, 2018

 8

 9        s\  Amie R. First
      Amie R. First, RDR, CRR, CRC, CPE
10    Federal Official Court Reporter
      United States District Court
11    Middle District of Florida

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```